IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Maria Alma Villarreal, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| | § | Civil Action No. 4:12-cv-00433 |
| The Texas A&M System | § | |
| *Defendant* | § | |
| | § | |

United States Courts
Southern District of Texas
FILED

OCT 2 2 2012

David J. Bradley, Clerk of Court

## PLAINTIFF'S MOTION TO OPPOSE PARTIAL DISMISSAL

Now comes the Plaintiff Maria "Alma" Villarreal and files this motion to oppose for partial dismissal of all discrimination charges based on age, national origin and disability in the Civil Action No. 4:12-cv-00433. In support, I, Maria "Alma" Villarreal respectfully request the following by the Court:

I Maria "Alma" Villarreal oppose to the motion for partial dismissal by the Defendant's claims that the court has lack of jurisdiction based on the Eleventh Amendment Immunity. The Eleventh Amendment Immunity does not apply to the Civil Action No. 412-cv-00433. The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

LEGAL BASIS

The Eleventh Amendment to the U.S. Constitution reads:

The Judicial power of the United States shall not be construed to extend to any suit in law or Equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The text of the Eleventh Amendment limits the power of federal courts to hear lawsuits against state governments brought by the citizens of another state or the citizens of a foreign country. The Supreme Court has also interpreted the Eleventh Amendment to bar federal courts from hearing lawsuits instituted by citizens of the state being sued and lawsuits initiated by the governments of foreign countries. For example, the state of New York could invoke the Eleventh Amendment to protect itself from being sued in federal court by its own residents, residents of another state, residents of a foreign country, or the government of a foreign country.

The Eleventh Amendment is rooted in the concept of Federalism, under which the U.S. Constitution carefully enumerates the powers of Congress to govern at the national level, while safeguarding the power of states to govern locally. By limiting the power of federal courts to hear lawsuits brought against state governments, the Eleventh Amendment attempts to strike a balance between the sovereignty shared by the state and federal governments.

"The object and purpose of the Eleventh Amendment [is] to prevent the indignity of subjecting a state to the coercive process of [federal] judicial tribunals at the instance of private parties" (*Ex parte Ayers*, 123 U.S. 443, 8 S. Ct. 164, 31 L. Ed. 216 [1887]). The Eleventh Amendment highlights an understanding that the state governments, while ratifying the federal Constitution to form a union, "maintain certain attributes of sovereignty, including sovereign immunity" from being sued in federal court (*Hans v. Louisiana*, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 [1890]).

However, the Eleventh Amendment does not bar all lawsuits brought against state governments in federal court. Four major exceptions have been recognized by the Supreme Court. First, the Eleventh Amendment does not apply to lawsuits brought against a state's political subdivisions. Accordingly, counties, cities, and municipalities may be sued in federal court without regard to the strictures of the Eleventh Amendment.

The second exception to the Eleventh Amendment permits a state government to waive its constitutional protections by consenting to a lawsuit against it in federal court. For example, Minnesota could waive its Eleventh Amendment protections by agreeing to allow a federal court to hear a lawsuit brought against it.

The third exception permits Congress to abrogate a state's Immunity from being sued in federal court by enacting legislation pursuant to its enforcement powers under the Equal Protection and Due Process Clauses of the Fourteenth Amendment (*Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S. Ct. 2666, 49 L. Ed. 2d 614 [1976]). Congressional intent to abrogate a state's Eleventh Amendment immunity must be "unmistakably clear" (*Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S. Ct. 3142, 87 L. Ed. 2d 171 [1985]). Evidence of this intent may be found in the legislative

floor debates that precede a congressional enactment (*Quern v. Jordan*, 440 U.S. 332, 99 S. Ct. 1139, 59 L. Ed. 2d 358 [1979]).

In 1996, the Supreme Court ruled that Congress may not abrogate a state's Sovereign Immunity from being sued in federal court pursuant to its regulatory powers under the Indian Commerce Clause contained in Article I, Section 8, of the Constitution (*Seminole Tribe v. Florida*, 517 U.S.44, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996). *Seminole* overruled *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S. Ct. 2273, 105 L. Ed. 2d 1 (1989), which held that Congress may abrogate a state's immunity under the Interstate Commerce Clause, which adjoins the Indian Commerce Clause in Article I.

Although *Seminole* involved the Indian Gaming Regulatory Act (18 U.S.C.A. §§ 1166 to 1168, 25 U.S.C.A. § 2701 et seq.), which governs certain gambling activities of Native American tribes, the Court's decision calls into question the continuing power of federal courts to hear lawsuits against state governments seeking to enforce environmental statutes, Bankruptcy laws, Intellectual Property legislation, and scores of other business regulations that have been enacted pursuant to congressional power under the Commerce Clause.

The Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) (42 U.S.C.A. § 9601 et seq.) is one federal law passed pursuant to congressional power under the Commerce Clause. This act makes states liable in federal court for costs incurred from cleaning up hazardous waste sites. (See *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S. Ct. 2273, 105 L. Ed. 2d 1 [1989]). The Court's decision in *Seminole* could affect thousands of lawsuits filed each year under this statute alone.

The final exception to the Eleventh Amendment permits citizens of any state to seek an Injunction against state officials in federal court to "end a continuing violation of federal law" (*Green v. Mansour*, 474 U.S. 64, 106 S. Ct. 423, 88 L. Ed. 2d 371 [1985]; *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 [1908]). For example, residents of Ohio are permitted to bring a lawsuit in federal court seeking to compel the state's governor to construct housing in compliance with the Americans with Disabilities Act (42 U.S.C.A. § 12101 et seq.), a federal statute designed to protect the rights of handicapped U.S. citizens (see *Martin v. Voinovich*, 840 F. Supp. 1175 S.D. Ohio [1993]). However, such a lawsuit would be barred by the Eleventh Amendment if the remedy sought were not injunctive relief but money damages to be paid out of the state's treasury.

The Supreme Court has distinguished permissible lawsuits seeking prospective equitable relief, such as the injunctive remedy sought by the Ohio residents, from impermissible lawsuits seeking money damages for past actions: "[F]ederal court[s] may award an injunction that governs [a state] official's future conduct, but not one that awards retroactive monetary relief" (*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S. Ct. 900, 79 L. Ed. 2d 67 [1984]). The distinction between prospective injunctive relief and retroactive money damages can be traced back to the Framers' original understanding of the Eleventh Amendment.

Ratified in 1795, the Eleventh Amendment was drafted to overrule the Supreme Court's decision in CHISHOLM V. GEORGIA, 2 U.S. (2 Dall.) 419, 1 L. Ed. 440 (1793), which held that a citizen of

one state may sue the government of another state in the U.S. Supreme Court. *Chisholm* created a maelstrom across the United States. At the close of the American Revolution, each state was greatly indebted to foreign creditors for financial and other assistance received during the war. Congressional representatives feared that *Chisholm* would permit these foreign creditors to ask federal courts to force the fiscally troubled state treasuries to bear the burden of these debts.

Representatives also expressed concern that British loyalists who had been dispossessed of their homes and personal belongings by the colonies during the revolution could now sue the state governments to recover their property. John Jay, the chief justice of the Supreme Court, exacerbated these concerns by advocating the full restoration of Loyalist property. A defiant Georgia House of Representatives passed a resolution providing that any person who attempted to collect a Revolutionary War debt or recover property pursuant to *Chisholm* "shall be declared guilty of a felony and ... suffer death without benefit of clergy, by being hanged."

Two days after *Chisholm* was handed down by the Supreme Court, an anonymous senator submitted to Congress a proposal that later became the Eleventh Amendment to the Constitution. From its inception, the Eleventh Amendment has fueled heated discussions among judges and lawyers about the appropriate manner in which it should be interpreted.

Federal courts derive their power to hear lawsuits from Article III of the Constitution. Section 2 of Article III specifies particular "Cases" and "Controversies" that can be decided by the federal judiciary. These cases and controversies fall into two general categories: those identified by their subject matter and those identified by their parties.

Federal courts have jurisdiction to hear cases whose subject matter "aris[es] under" the U.S. Constitution, an Executive Order promulgated by the president, a federal law enacted by Congress, or a treaty between the United States and another country (U.S. Const. art III, § 2). Such cases are said to present federal questions because they involve legal issues based on one of these species of federal law. For example, cases involving free speech claims under the First Amendment or discrimination claims under the CIVIL RIGHTS ACT of 1871 (42 U.S.C.A. § 1983) present federal questions and confer upon federal courts the Subject Matter Jurisdiction to resolve them.

Federal courts also have jurisdiction to hear cases based on the parties involved in the lawsuit. Under what is sometimes called party-based jurisdiction, federal judges have the power to decide cases affecting "Ambassadors" and "other public Ministers and Consuls." The federal judiciary may also entertain disputes "between two or more States," "between Citizens of different states," or *"between a State and Citizens of another State"* (U.S. Const. art. III, § 2). The italicized clause contemplates federal jurisdiction extending to cases between state governments and citizens of other states and provided the basis for the Supreme Court's decision in *Chisholm*.

Although the Eleventh Amendment was clearly adopted in response to the Supreme Court's interpretation of Article III in *Chisholm*, it has not been applied in a clear or uniform manner by the courts. Four alternative theories of interpretation have been advanced by lawyers and judges.

The first theory of interpretation, espoused by Justice Thurgood Marshall, insists that the

Eleventh Amendment protects states from being sued in federal court without their consent. It "had been widely understood prior to ratification of the Constitution," Marshall said, "that the provision in Art[icle] III, Section 2 ... would not provide a mechanism for making states unwilling defendants in federal court" (*Department of Public Health & Welfare v. Department of Public Health & Welfare*, 411 U.S. 279, 93 S. Ct. 1614, 36 L. Ed. 2d 251 [1973]). Marshall believed that the Eleventh Amendment did not change this original understanding of federal jurisdiction. For Marshall, then, the meaning of the Eleventh Amendment was simple: A state could not be sued in federal court under any circumstances in which the state did not consent.

According to the second theory of interpretation, the Eleventh Amendment applies only to party-based jurisdiction and not to subject matter jurisdiction. This theory, advanced by Justice WILLIAM J. BRENNAN JR., permits federal courts to hear lawsuits against states that present federal questions, such as those "arising under" the Constitution, but bars federal judges from deciding cases in which the plaintiff lives in a different state than the one being sued. Adherents of this theory point out that *Chisholm*, the Supreme Court decision that was overruled by the Eleventh Amendment, involved party-based jurisdiction and was not subject matter jurisdiction.

The third theory of interpretation relies on the text of the Eleventh Amendment itself. Again, the language of the Eleventh Amendment suggests that federal courts may hear only two types of lawsuits against state governments: those brought by citizens of another state and those brought by citizens of another country. Under this theory, federal courts can entertain lawsuits seeking to vindicate a federal constitutional or statutory right only if the plaintiff lives in a different state from the one he or she is suing or is the citizen of a foreign country. If the plaintiff resides in the state he or she is suing, only a state court may hear the case.

The fourth theory of interpretation also focuses on the language of the Eleventh Amendment, but in a different way. This theory stresses that the Eleventh Amendment explicitly limits the "Judicial power of the United States" but makes no mention of federal legislative power (U.S. Const. art. III, § 2). In this light, the Eleventh Amendment explicitly restricts the power of federal judges to hear cases against state governments and implicitly permits Congress to abrogate a state's sovereign immunity from being sued in federal court. This theory permits citizens of any state, including the state being sued, to file a lawsuit against a state government in federal court to enforce a legal right delineated by congressional legislation. Many advocates of this theory argue that Congress's authority to enact such legislation derives from any of its constitutionally enumerated powers, and not just its powers under the Fourteenth Amendment as the Supreme Court concluded in *Seminole*.

The diversity of these theories demonstrates the complexity of Eleventh Amendment Jurisprudence, as does the Supreme Court's decision in *Seminole*, which overruled a case less than eight years old. Yet, most adherents to these various theories would agree on one point: There is an advantage, however slight, to filing a lawsuit in federal court rather than state court. A federal court is more likely to render an impartial verdict than is a judge or juror who resides in the state being sued. For this reason, plaintiffs, and the lawyers representing them, will continue to sue state governments in federal court and argue vociferously for the most narrow interpretation of the Eleventh Amendment's sovereign immunity.

In *Lapides v. Bd. of Regents*, 535 U.S. 613, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002), the petitioner, a professor in the Georgia state university system, filed a state-court suit against the system's Board of Regents and university officials alleging that the officials had violated state Tort Law and 42 U. S. C. §1983 when they placed Sexual Harassment allegations in his personnel files. The defendants removed the case to federal district court and then sought dismissal. Conceding that a state statute had waived Georgia's sovereign immunity from state-law suits in state court, the State claimed Eleventh Amendment immunity from suit in the federal court. The Supreme Court found that a State waives its Eleventh Amendment immunity when it removes a case from state court to federal court.

## PRAYER

The Plaintiff Maria "Alma" Villarreal respectfully requests that the Defendant's Second Motion for Partial Dismissal to be DENIED. Plaintiff further requests that it be allowed all other relief, both at law and in equity, to which it may be justly entitled. Plaintiff has been discriminated, intimidated and mistreated by the Defendant.

Respectfully submitted,

*Maria "Alma" Villarreal*
Maria "Alma" Villarreal

### Certificate of Service

I certify that a true and correct copy of the this document was sent by U. S. regular mail and certified mail return receipt on October 18, 2012, upon the listed addresses:

**CMMR# 7012 0470 0001 2397 1330**
U. S. District Court
Southern District of Texas
Post Office Box 61010
Houston, Texas 77208


**CMMR# 7012 0470 0001 2397 1323**
Mr. Jason Contreras
Assistant Attorney General
Office of the Attorney General
P. O. Box 12548
Austin, Texas 78711-2548